**Sheila Penland OLVERA, Administratrix of the Estate of Rigoberto Olvera Briones, Plaintiff,**

v.

**Randall Thomas EDMUNDSON and Douglas McGuinn, each individually and in his official capacity as a Deputy Sheriff; George Erwin, Jr., individually and in his official capacity as Sheriff of Henderson County; Sedgwick James of Carolinas Company, as Surety for Sheriff Erwin; and Henderson County, Defendants.**

No. CIV. 1:01CV74.

United States District Court,
W.D. North Carolina,
Asheville Division.

July 17, 2001.

Sheila Penland Olvera, Hendersonville, NC, pro se.

Scott D. MacLatchie, Womble, Carlyle, Sandridge & Rice, Charlotte, NC, for defendants.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Pursuant to standing orders of designation and 28 U.S.C. § 636, this Court referred Defendants' motion for partial dismissal to the Magistrate Judge for a recommendation as to disposition. Neither party having filed objections to the Magistrate Judge's Memorandum and Recommendation, the Court has reviewed the Magistrate Judge's recommendation for clear error. *See* Fed.R.Civ.P. 72(b) **(Advisory Committee Notes);** *Thomas v. Arn,* 474 U.S. 140, 154, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). The Court grants in part and denies in part Defendants' motion.

## I. STANDARD OF REVIEW

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) "tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin,* 980 F.2d 943, 952 (4th Cir.1992) (citations omitted). The motion " 'should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.' " *McNair v. Lend Lease Trucks, Inc.,* 95 F.3d 325, 328 (4th Cir.1996) (quoting *Rog-*

*ers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir.1989)). In considering the facts of the case for purposes of ruling on the Defendants' motion, the Court will view the pleadings and material presented in the light most favorable to the Plaintiff, as the nonmoving party, assuming all factual allegations to be true. *See, e.g., Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993).

## II.  FACTUAL BACKGROUND

According to Plaintiff's pleadings, the facts are as follows.  Rigoberto Olvera Briones attended a barbecue at a friend's residence in the Stepps Mobile Home park in Henderson County, North Carolina, the evening of April 10, 1999.  **Complaint, ¶ 12.**  Sometime late in the evening of the 10th or in the early morning hours of the 11th, Briones left the festivities in his truck.  *Id.* ¶ 13.  As Briones exited the mobile home park he passed Deputy Sheriff Randall Edmundson parked in his patrol car with the lights off at the end of the driveway to the mobile home park.  *Id.*  After coming to a stop at the bottom of the driveway, Briones pulled out onto the main road. *Id.* ¶ 14.

As Briones was pulling onto the main road, a patrol car driven by Deputy Sheriff Douglas McGuinn came across the crest of the road at a high rate of speed, crossing left of center.  *Id.* ¶¶ 14, 17.  Briones attempted to stop his truck in order to avoid colliding with Deputy McGuinn, but failed to do so.  *Id.* ¶¶ 14, 16.  Briones, who was unarmed, was shot in the back of the head by Deputy Edmundson and was shot in the face by Deputy McGuinn.  *Id.* ¶¶ 1, 14–15.  He died at the scene.  *Id.* ¶ 18.  Sheriff Erwin investigated the fatal shooting, but took no disciplinary action against Depu-

ties McGuinn and Edmundson.  *Id.* ¶¶ 21–23.

Plaintiff, administratrix of the estate of Briones, brings this action seeking to recover damages from Henderson County, Sheriff Erwin, Deputy McGuinn, Deputy Edmundson, and Sedgwick James of Carolinas, the surety of the Sheriff's and Deputies' bonds.  Plaintiff alleges three claims for relief: first, that Defendants violated Briones' Fourth and Fourteenth Amendment right to be free from unreasonable seizures and his Fifth and Fourteenth Amendment right to due process, actionable pursuant to 42 U.S.C. § 1983; second, that Defendants violated Briones' and his family's rights to substantive due process guaranteed by Article 1 of the North Carolina Constitution; and, third, that Defendants are liable for Briones' death pursuant to a North Carolina common law claim for wrongful death.

## III.  DISCUSSION

### A.  Eleventh Amendment Immunity:

██  Defendants assert that they are entitled to Eleventh Amendment immunity from Plaintiff's § 1983 claims because they are "state officials."  Defendants offer two arguments in support of their position.  First, they state that the decision of the North Carolina Court of Appeals in *Buchanan v. Hight*, 133 N.C.App. 299, 515 S.E.2d 225 (1999), finding that sheriffs are state officials, "is binding upon this [C]ourt and must be followed."  **Motion to Dismiss, at 5.**  Second, Defendants argue that the Fourth Circuit's decision in *Harter v. Vernon*, 101 F.3d 334 (4th Cir.1996), holding that sheriffs in North Carolina are *not* state officials, was effectively abrogated by the United State Supreme Court in *McMillian v. Monroe County*, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), and *Regents of the University of California v. Doe*, 519 U.S. 425, 117 S.Ct. 900, 137

L.Ed.2d 55 (1997). For the reasons which follow, the Court disagrees.

■ "While '[a] state court's view of the status of a state political entity' may be relevant 'in determining whether that entity is entitled to eleventh amendment immunity,' '[t]he question of whether an agency is the *alter ego* of the state and thereby immune from federal jurisdiction under the eleventh amendment is a question of federal, not state, law[.]' " *Gray v. Laws*, 51 F.3d 426, 435 (4th Cir.1995) (quoting *Ram Ditta v. Maryland Nat'l Capital Park and Planning Comm'n*, 822 F.2d 456, 459 (4th Cir.1987)); *accord Cash v. Granville County Bd. of Educ.*, 242 F.3d 219, 222 (4th Cir.2001) (**"Because this question requires interpretation of the Eleventh Amendment, it is a federal question that we decide *de novo*, even though State law must be considered in defining the [entity's] 'character.' "**); *Harter*, 101 F.3d at 342. "A federal court may 'give deference to the rationale used by a state court,' but the holding is not dispositive as a matter of federal law." *Harter*, 101 F.3d at 342 (quoting *Ram Ditta*, 822 F.2d at 460, and citing *Gray*, 51 F.3d at 437).

Indeed, here, *Buchanan* is neither controlling nor even persuasive. This is so because *Buchanan* rests entirely on North Carolina Court of Appeals precedent that the Fourth Circuit explicitly rejected in *Harter*. In *Buchanan* the North Carolina Court of Appeals relied solely on their previous holdings in *Messick v. Catawba County*, 110 N.C.App. 707, 431 S.E.2d 489 (1993) and *Slade v. Vernon*, 110 N.C.App. 422, 429 S.E.2d 744 (1993). Rejecting the defendant's reliance on these *same cases* in *Harter*, the Fourth Circuit stated "we find the proffered state court holdings here unpersuasive in view of the fact that neither was decided by the states's highest court, and 'there is no reasoning provided for [either] court[s'] conclusion.' " 101 F.3d at 342 (**brackets original**) (**quoting** *Gray*, 51 F.3d at 437); *cf. Gray*, 51 F.3d at 437 (**noting that in** *Ram Ditta, supra,* **the Circuit rejected an Eleventh Amendment immunity claim even though the state's highest court had ruled otherwise**). Plainly, a state court holding which is premised exclusively on cases which have been expressly rejected by the Fourth Circuit is entitled to no deference by this Court.

With respect to Defendants' contention that *Harter* was abrogated by the Supreme Court's decisions in *McMillian* and *Regents*, this Court need note only that the Fourth Circuit has, within the last six months (and more than three years after *McMillian* and *Regents* were decided), reaffirmed the continuing viability of their holdings in *Harter*, *Gray*, and *Ram Ditta*. *Cash*, 242 F.3d at 227. Indeed, the *Cash* court expressly relied upon *Harter* in finding that a school board is a local rather than state body for purposes of Eleventh Amendment immunity. 242 F.3d at 226. *Harter's* continuing viability is unmistakable, as the *Cash* court explained: "Just as law enforcement can be thought of as a statewide concern, we have nevertheless concluded that a county sheriff's duties in North Carolina can be primarily local." *Id.* (citing *Harter*, 101 F.3d at 342).

■ Putting *Cash* to one side, Defendants' attempt to distinguish the Circuit's unpublished opinion in *Carter v. Barker*, 225 F.3d 653, 2000 WL 1008794 (table) (4th Cir.2000), is similarly unpersuasive. The issue in determining Eleventh Amendment immunity is not whether a sheriff is acting in his "law enforcement capacity" or his capacity as an employer; rather, it is whether he is a state or local official (acting in either "capacity"). *See, e.g., id.* at *6; *Cash*, 242 F.3d at 222–25. Here, like in *Carter*, the Defendant Sheriff asserts

that *McMillian* and *Regents* "changed the law on Eleventh Amendment immunity for governmental officials." *Carter*, 2000 WL 1008794, *6; **Motion to Dismiss, at 3–5.** The *Carter* court rejected this argument, "conclud[ing] that the Eleventh Amendment does not bar [plaintiff's] official capacity suits against [the] Sheriff[.]" *Id.* Moreover, in reaching this decision, the court relied upon their earlier (published) decision in *Harter.* *Id.* Thus, it is clear that subsequent to *McMillian* and *Regents*, and even before *Cash, Harter* remains good law. *See, e.g., Lynn v. West,* 134 F.3d 582, 587 (4th Cir.1998); *Ramsey v. Schauble,* 141 F.Supp.2d 584, 589–90 (W.D.N.C.2001).

For the foregoing reasons, this Court is compelled to conclude that Defendants are not entitled to Eleventh Amendment immunity.

### B. Henderson County:

Plaintiff seeks to impose liability upon Henderson County for its alleged "deliberate indifference to the need to train" the Defendant Deputy Sheriffs and under the theory of *respondeat superior.* However, "[a] county may only be held liable for acts for which the county has 'final policy-making authority.'" *Worrell v. Bedsole,* 110 F.3d 62 (table), 1997 WL 153830, *5 (4th Cir.1997) (quoting *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)). Whether a county has final policymaking authority is a question of state law. *Id.* In North Carolina, "[t]he sheriff, not the county, has final policymaking authority over the personnel decisions in his office." *Id.* (citing *Clark v. Burke County,* 117 N.C.App. 85, 89, 450 S.E.2d 747, 749 (1994)). Because training and supervision constitutes "personnel decisions" for purposes of determining who possesses policymaking authority, the County is entitled to

dismissal. *Clark,* 117 N.C.App. at 89–90, 450 S.E.2d at 749 **(dismissing failure-to-train complaint against county);** *accord Knight v. Vernon,* 214 F.3d 544, 552–53 (4th Cir.2000); *Little v. Smith,* 114 F.Supp.2d 437, 446 (W.D.N.C.2000).

### C. State Constitution Claims:

Plaintiff also alleges that Defendants violated decedent's and his family's due process rights. "North Carolina does not recognize a cause of action for monetary damages against a person, sued in his individual capacity, who allegedly violated plaintiff's state constitutional rights." *Estate of Fennell ex rel. Fennell v. Stephenson,* 137 N.C.App. 430, 436–37, 528 S.E.2d 911, 915, *disc. rev. granted,* 352 N.C. 588, 545 S.E.2d 224 (2000) **(citing** *Corum v. University of North Carolina,* 330 N.C. 761, 788, 413 S.E.2d 276, 293 (1992)). However, "[a]n individual whose state constitutional rights have been abridged has a direct action for monetary damages against a state official in [his] official ... capacity [ ] if there is no adequate remedy provided by state law." *Rousselo v. Starling,* 128 N.C.App. 439, 446–47, 495 S.E.2d 725, 730 (1998) (citing *Corum,* 330 N.C. at 783–87, 413 S.E.2d at 290–92) **(brackets original).** "An adequate state remedy exists if, assuming the plaintiff's claim is successful, the remedy would compensate the plaintiff for the *same injury* alleged in the direct constitutional claim." *Estate of Fennell,* 137 N.C.App. at 437, 528 S.E.2d at 915–16 **(citing** *Rousselo,* 128 N.C.App. at 447, 495 S.E.2d at 731). Because a wrongful death claim could compensate Plaintiff for the same injuries (death) as the state constitutional law claim, the latter must be dismissed. *Id.* **(dismissing state constitutional law claim because wrongful death action was available).**

### D. Public Official Immunity:

Defendants assert that Sheriff Erwin, in his individual capacity only, is

entitled to the protection of public official immunity from Plaintiff's wrongful death claim.

To maintain a suit against a public official in his/her individual capacity [at the summary judgment stage], the plaintiff must make a *prima facie* showing that the official's actions (under color of authority) are sufficient to pierce the cloak of official immunity. Actions that are malicious, corrupt or outside the scope of official duties will pierce the cloak of official immunity, thus holding the official liable for his acts like any private individual.

*Moore v. Evans*, 124 N.C.App. 35, 42, 476 S.E.2d 415, 421 (1996) **(internal citations omitted)**. " 'A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he *intends* to be prejudicial or injurious to others.' " *Thomas v. Sellers*, 142 N.C.App. 310, 542 S.E.2d 283, 286 (2001) **(quoting** *Grad v. Kaasa*, 312 N.C. 310, 313, 321 S.E.2d 888, 890 (1984)) **(emphasis added)**. "An act is wanton when it is done of wicked purpose, or when it is done needlessly, manifesting a reckless indifference to the rights of others." *Marlowe v. Piner*, 119 N.C.App. 125, 128, 458 S.E.2d 220, 223 (1995) **(citing** *Kaasa*, 312 N.C. at 313, 321 S.E.2d at 891). Plaintiff alleges, however, that the decedent's death was caused by Sheriff Erwin's *deliberate indifference* to the need for firearms training, rather than his *intention* to injure (or be otherwise prejudicial to) the decedent. **Complaint, at 9**. Accordingly, Sheriff Erwin is entitled to dismissal on Plaintiff's wrongful death claim against him in his individual capacity. *See Piner*, 119 N.C.App. at 128, 458 S.E.2d at 223 **(deputy sheriff entitled to summary judgment where plaintiff alleged only negligence)**.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' motion to dismiss all of Plaintiff's claims against Henderson County is **GRANTED**, and all claims as to Defendant Henderson County are hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss Plaintiff's claims against all Defendants for violations of the North Carolina Constitution is **GRANTED**, and Plaintiff's Second Claim for Relief is hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss Plaintiff's wrongful death claim against Sheriff Erwin in his *individual* capacity is **GRANTED**, and such claim is hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss Plaintiff's § 1983 claims against all Defendants in their official capacities is hereby **DENIED**.