**HENDERSON AMUSEMENT, INC.; Kenneth Branch; Kevin Branch, dba Blue Ridge Enterprises; Bell Music Machine Corp.; Harry Honeycutt, dba Games, Sales and Leasing; Tina Peake, dba Legend's Billiards; and Richard Allen McGee, dba 221 Express Lube, Plaintiffs,**

v.

**Daniel J. GOOD, Sheriff of Rutherford County, North Carolina, Defendant.**

No. 1:00CV256–C.

United States District Court,
W.D. North Carolina.
Asheville Division.

Nov. 2, 2001.

W. Robinson Deaton, Jr., Shelby, NC, for plaintiffs.

Scott D. MacLatchie, Womble, Carlyle, Sandridge & Rice, Charlotte, NC, for defendant.

## MEMORANDUM OF DECISION

COGBURN, United States Magistrate Judge.

**THIS MATTER** is before the court upon defendant's Motion for Summary Judgment. Having considered that motion and reviewed the pleadings, including

plaintiffs' response and defendant's reply, the court enters the following findings, conclusions, and decision.

## FINDINGS AND CONCLUSIONS

### I. Background

■ This action was timely removed from the North Carolina General Court of Justice, Superior Court Division, Rutherford County, under an assertion of federal-question jurisdiction. This court has original jurisdiction over plaintiffs' claim asserted under 42, United States Code, Section 1983,[1] and supplemental jurisdiction over the additional state-law claims.[2] Inasmuch as the viability of the state-law claims is dependent upon a constitutional violation, the court will first address the federal question.

Having reviewed all the pleadings and evidentiary materials submitted, the court finds no genuine issues of material fact, and the facts underlying plaintiffs' claims are briefly summarized herein to aid the decision-making process. Plaintiffs are owners of video gaming machines. In September 2000, pursuant to state law, defendant, in his capacity as Sheriff of Rutherford County, seized those machines as contraband. In North Carolina, certain devices are excluded from the definition of unlawful slot machines. First, pinball and video arcade amusements are not "slot machines" or "video gaming machines" where they do not produce a record, such as a coupon or receipt, capable of redemption. N.C. Gen.Stat. 14–306(b)(1). Second, gaming machines that may produce a record, receipt, or coupon, but limit the accumulat-

ed credits or replays to eight, allow exchange of the credit for merchandise or prizes and do not allow exchange of the credit for cash. N.C. Gen.Stat. 14–306(b)(2). The machines at issue here fall under the second exception, and the new law, Chapter 306.1(a)(1) & (2), clearly is an attempt by the state legislature to cap the number of such machines operating in the state. The undisputed origin of such legislation was that lawmakers foresaw a migration in the summer of 2000 of video gaming machines from South Carolina, where a ban on such machines was scheduled to take effect July 1, 2000.

Under the new legislation, an effort was made to separate machines lawfully operating in the state under Chapter 306(b)(2) and those migrating from South Carolina. To meet the new standard, a game owner would have to show that the machine was

1. "lawfully in operation, and available for play, within this State on or before June 30, 2000"; and

2. "listed in this State by January 31, 2000, for ad valorem taxation for the 2000–2001 tax year."

N.C. Gen.Stat. § 14–306.1(a)(1) & (2). For machines that qualified under such provisions, the owners were required to register them by October 1, 2000, with the sheriff of the county in which such machines were located. N.C. Gen.Stat. § 14–306.1(e).

■ At issue here are machines that were, without dispute, not listed with the tax assessor *by* January 31, 2000, as required by Chapter 14–306.1(a)(2), but

---

1. The states have concurrent jurisdiction over Section 1983 claims. *See* Maine v. Thiboutot, 448 U.S. 1, 3 n. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). "A congressional grant of concurrent jurisdiction ... does not imply that removal is prohibited." 14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3729, at 495 (2d ed.1985).

2. Plaintiffs' first, second, third, and fifth causes of action are for "remedies" afforded at state common law, and all appear to be based on the seizure of video gaming machines, which plaintiffs, in the fourth cause of action, contend was done in violation of the fourteenth amendment to the United States Constitution.

which plaintiffs attempted to register with defendant, in any event, before October 1, 2001,[3] under Chapter 14–306.1(e). In furtherance of their claim that defendant's seizure of their machines violates the fourteenth amendment,[4] plaintiffs contend that the sheriff should have approved the registrations rather than seize the machines because the "discovered-property" provision of the state tax code[5] would qualify their machines for registration under the state law.

Finally, the law provided that unless a video gaming machine was both lawfully in operation and available for play in North Carolina by June 30, 2000, and listed by January 31, 2000, for *ad valorem* property taxation, it was unlawful to operate, or possess for purpose of operation, any such machine, N.C. Gen.Stat. § 14–306.1(a); and the warehousing of unregistered video gaming machines was also made unlawful under the new legislation. N.C. Gen.Stat. § 14–306.1(h). To be lawful, qualifying machines must have been registered with the sheriff of the county in which the machines were located no later than October 1, 2000. N.C.G.S. § 14–306.1(e). Violation of such law is a criminal offense, punishable as a Class 1 misdemeanor for the first offense, a Class 1 felony for the second violation, and a Class H felony for a third or subsequent violation. N.C. Gen. Stat. § 14–309.

## II. Summary–Judgment Standard

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting that burden, the nonmoving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial.*" Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving [sic] party, there is no "genuine issue for trial."

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted; emphasis in the original) (quoting Fed.R.Civ.P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**3.** As defendant points out, a number of machines at issue are not in Rutherford County and certain plaintiffs may not have standing as against this defendant. Such issue of fact is not material to the legal resolution of the constitutional claim asserted.

**4.** The court agrees with defendant that the catchall "due-process" analysis afforded under the fourteenth amendment is inapplicable where a more specific, textual amendment applies to the specific constitutional harm asserted. In this case, a claim of unlawful seizure would be reviewed under the protections afforded plaintiffs by the fourth amendment. The court has, therefore, construed plaintiffs' claim in a light most favorable to them through substituting a fourth-amendment claim for the fourteenth-amendment claim.

**5.** Chapter 105–312(e) of the North Carolina General Statutes permits a county tax assessor to tax property that was not timely disclosed for *ad valorem* taxation, but which he subsequently "discovers," allowing him to tax it for the current tax year and the preceding five years. Items listed as "discovered property" are, per the tax code, to be treated as though they had been listed during the "regular listing period," *i.e.*, the month of January for each year.

The possibility that plaintiffs may have alleged a constitutional violation merits more than bald denials and summary dismissals. *Wooten v. Shook,* 527 F.2d 976, 977–78 (4th Cir.1975).

By reviewing substantive law, the court may determine what matters constitute material facts. *Anderson v. Liberty Lobby, supra.* "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Id.,* at 248, 106 S.Ct. 2505. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.*

> [T]he court is obliged to credit the factual asseverations contained in the material before it which favor the party resisting summary judgment and to draw inferences favorable to that party if the inferences are reasonable (however improbable they may seem).

*Cole v. Cole,* 633 F.2d 1083, 1092 (4th Cir.1980). Affidavits filed in support of defendant's Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. *United States ex rel. Jones v. Rundle,* 453 F.2d 147 (3d Cir.1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. *Davis v. Zahradnick,* 600 F.2d 458 (4th Cir.1979).

## III. Discussion

### A. Fourth–Amendment Claim

#### 1. The right asserted

 Section 1983 "is not itself a source of substantive rights," but provides litigants with a procedure that allows them to vindicate "federal rights elsewhere conferred." *Baker v. McCollan,* 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). In considering a Section 1983 claim, the court must first identify the specific constitutional right purportedly infringed. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Plaintiffs contend that the seizure of their video gaming machines was unreasonable; therefore, the source of the applicable federal right is the fourth amendment, which provides, as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., Amend. IV. The Supreme Court held that the fourth amendment applies to Section 1983 claims concerning seized property:

> [S]eizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place. More generally, an officer who happens to come across an individual's property in a public area could seize it only if Fourth Amendment standards are satisfied—for example, if the items are evidence of a crime or contraband.

*Soldal v. Cook County, Ill.,* 506 U.S. 56, 68, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (citations and footnote omitted). The fourth amendment affords protection from unreasonable seizures. As to real or personal property, a seizure occurs whenever there is any "meaningful interference" with an individual's possessory interests in such property. *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987).

#### 2. Narrowing the fourth-amendment claim

 Having established the asserted right, the next task for the court is to

determine exactly how plaintiffs contend such right was violated by defendant. The four claims for injunctive relief have given this court pause, because, if allowed, they would require, based on the injunctive power of this court, that a state law enforcement officer not enforce state laws, which could require a three-judge panel. *See* 28 U.S.C. § 2284.[6] In a case nearly on point, but in another context, the Court of Appeals for the Fourth Circuit reasoned, as follows:

> We conclude, however, that a three-judge court was not required. The theatre [the plaintiff] does not contest the authority of the Commonwealth's Attorney to seize obscene films. It simply asserts that first there must be an adversary hearing to determine obscenity. Virginia's search and seizure statutes require the judge or justice issuing the warrant to be satisfied that there is reasonable cause for the search. Generally, reasonable cause can be established from an affidavit, but the judge need not accept the affidavit alone, and nothing in the statutes prohibits him from conducting an adversary hearing, as the Constitution requires. When, as here, statutes would be constitutionally applied if administered properly, a single judge has jurisdiction.

> \* \* \* \* \* \*

In *Phillips v. United States*, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941), Mr. Justice Frankfurter, holding a three-judge court unnecessary in an analogous situation, wrote:

> The crux of the business is procedural protection against an improvident state-wide doom by a federal court of a state's legislative policy. This was the aim of Congress and this is the

reconciling principle of the cases. Some constitutional or statutory provision is the ultimate source of all actions by state officials. But an attack on lawless exercise of authority in a particular case is not an attack upon the constitutionality of a statute conferring the authority even though a misreading of the statute is invoked as justification. At least not within the congressional scheme of (28 U.S.C. § 2281). It is significant that the United States in its complaint did not charge the enabling acts of Oklahoma with unconstitutionality, but assailed merely the Governor's action as exceeding the bounds of law. In other words, it seeks a restraint not of a statute but of an executive action. But the enforcement of a "statute," within the meaning of (28 U.S.C. § 2281), is not sought to be enjoined merely because a state official seeks shelter under it by way of defense against a charge of lawlessness.

*Tyrone, Inc. v. Wilkinson*, 410 F.2d 639, 643–44 (4th Cir.1969). The court determines that plaintiffs are not contending that the statute is unconstitutional, only that the defendant failed to give it the broader interpretation which plaintiffs believe is warranted.

### 3. Personal Capacity: Qualified Immunity

■ Under the doctrine of qualified immunity, the court ignores the legal analysis of the questioned statute and assumes *arguendo* that plaintiffs' legal proposition is correct, to wit, that the law could be read to allow registration of video gaming machines under the "discovered property" tax rule. With such assumption, the only in-

---

**6.** Section 1983 suits are "expressly authorized" exceptions to the Anti–Injunction Act, 28 U.S.C. § 2283 (1988), which generally prohibits federal court from enjoining state-court proceedings. Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); *see* Gibson v. Berryhill, 411 U.S. 564, 573, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973).

quiry for the court is whether defendant, sued in his individual capacity, is entitled to qualified immunity from plaintiffs' claims because objectively reasonable officers possessing identical information reasonably would have believed that their conduct was lawful. Even if this officer's purported conduct had violated a clearly established rule of law (which no one can argue that it did), he would still be entitled to immunity if he reasonably believed his conduct was lawful. *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). *See also Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

 Public officials are free from liability for monetary damages if they can plead and prove that their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 815–16, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Supreme Court held that qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Id.,* at 526, 105 S.Ct. 2806. Qualified immunity is a question of law. *Adams v. St. Lucie County Sheriff's Department,* 962 F.2d 1563, 1566–67 (11th Cir.1992). In this case, plaintiffs' theory of liability under Section 1983 would be based upon a right which does not exist in any reported case, *i.e.,* to be free from seizure of property which is contraband under the plain meaning of a statute, but which would not be contraband under a broader reading of the same statute.

 When a defendant moves for summary judgment on the ground of qualified immunity, the court "considers in the light most favorable to the plaintiff all facts fairly inferable from the record—regardless of the existence of factual disputes—and decides whether, under those facts, defendant's conduct violated law clearly established at the time." *Bennett v. Parker,* 898 F.2d 1530 n. 2 (11th Cir. 1990). Plaintiffs must produce evidence sufficient to create a genuine issue as to whether defendant committed the acts alleged. As a matter of law, those acts must be sufficient to generate liability under the fourth amendment. All inferences, including credibility of an affiant, are drawn in favor of a plaintiff for qualified-immunity purposes. *Gordon v. Kidd,* 971 F.2d 1087, 1093–94 (4th Cir.1992).

 If it is undisputed that the right allegedly violated was clearly established at the time, the defendant asserting a qualified-immunity defense may still be immune from damages for violation of that right if, under the circumstances, a reasonable officer could have believed that his particular conduct was lawful. A court must make an objective, although fact-specific, inquiry into the legal reasonableness of the conduct. *Anderson v. Creighton, supra,* at 641, 107 S.Ct. 3034. The lawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable officer charged with knowledge of established law; a defendant's motives are irrelevant to the qualified-immunity inquiry. *Id.*

 Where, as here, a plaintiff alleges that a police officer has improperly seized property in violation of the fourth amendment, the qualified-immunity inquiry is the same as the inquiry made on the merits. *Hopkins v. Andaya,* 958 F.2d 881, 885 n. 3 (9th Cir.1992); *Quezada v. County of Bernalillo,* 944 F.2d 710, 718 (10th Cir. 1991); Dixon v. Richer, 922 F.2d 1456 (10th Cir.1991). Following the analysis applicable to warrantless seizure of contraband, "an officer who happens to come

across an individual's property in a public area could seize it only if Fourth Amendment standards are satisfied—for example, if the items are evidence of a crime or contraband," *Soldal v. Cook County, Ill., supra,* at 68, 113 S.Ct. 538, the lawfulness of the claimed actions of defendant in taking possession of plaintiffs' property is apparent. The court will grant defendant's Motion for Summary Judgment based on qualified immunity for claims asserted against him in his individual capacity.

## 4. Official Capacity: Eleventh–Amendment Immunity

In his official capacity, defendant next asserts that the claims that remain against him at this point must be dismissed, inasmuch as he is an official of the state, not the county, and the eleventh amendment prohibits Section 1983 actions against the state. From the outset, this court will acknowledge that a divergence of opinion exists on whether a North Carolina sheriff is a state official, as opposed to a county official, and while taking a stance that differs from other judges within this district, the undersigned has the utmost respect for those decisions and the reasoning therein employed.

A sheriff in North Carolina is a state officer, not a county officer, and any Section 1983 official-capacity claim is barred, inasmuch as a suit against a state actor is a suit against the state, which enjoys immunity under the eleventh amendment.

In *Harter v. Vernon,* 101 F.3d 334 (4th Cir.1996), the Court of Appeals for the Fourth Circuit concluded that a North Carolina sheriff acts on behalf of his or her county, not the state, when performing law-enforcement duties, and, therefore, is not entitled to eleventh-amendment immunity. After *Harter,* the United States Supreme Court, in *Regents of the University of California v. Doe,* 519 U.S. 425, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997), abandoned the analysis applied by the appellate court in *Harter.*

The *Harter* court determined that the most critical factor, if not the conclusive one, is whether the treasury of the state would be affected by an adverse judgment against the public official in question. *Id.,* at 337–39. The Court in *Regents* later determined that the impact of a judgment on a state treasury is not the dominant factor in determining eleventh-amendment immunity, since the determination does not turn on "a formalistic question of ultimate financial responsibility." *Regents of the University of California v. Doe, supra,* at 431, 117 S.Ct. 900. The Court further held that the question of whether a particular entity is an arm of the state "can be answered *only* after considering the provisions of state law that define the agency's character [as an agency of local government or an arm of the state]." *Id.,* at 429, n. 5, 117 S.Ct. 900 (emphasis added).

This departure from *Harter* was further emphasized in the Supreme Court's latest opinion, *McMillian v. Monroe County,* 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), wherein the Court unequivocally held that the question of whether a sheriff represents the state or the county is "dependent on the definition of the official's functions under relevant state law." *Id.,* at 1737.

In reliance upon *McMillian,* the North Carolina Court of Appeals, in *Buchanan v. Hight,* 133 N.C.App. 299, 515 S.E.2d 225 (1999), *review denied,* 351 N.C. 351, 539 S.E.2d 280 (1999), recently reaffirmed that a sheriff and his deputies function as "state officials" and, therefore, are not "persons" within the meaning of Section 1983 when sued in their official capacities. *See also Knight v. Vernon,* 214 F.3d 544, 552 (4th Cir.2000). *McMillian* provides that this court is required to look to state

law in determining whether a local public official acts on behalf of the county or the state.

This court notes that in *Olvera v. Edmundson*, 151 F.Supp.2d 700 (W.D.N.C. 2001), the district court reversed the undersigned in a Section 1983 case that was considered in the context of 28, United States Code, Section 636(b). There, the district court relied, in part, upon the unpublished *per curiam* panel decision of *Carter v. Barker*, 225 F.3d 653 (table), 2000 WL 1008794 (4th Cir.2000), in finding that a North Carolina sheriff does not enjoy the state's eleventh-amendment immunity.[7] This court, most respectfully, disagrees with such interpretation of *Carter*. It appears that the court in *Carter* concluded that the Supreme Court decisions in *McMillian* and *Regents* had no application to that particular case, which involved a Title VII claim by an employee of a sheriff's department, not a Section 1983 claim. In its entirety, the *Carter* court held on such issue, as follows:

> Sheriff Barker argues that the district court erred by denying him Eleventh Amendment immunity. Because the Eleventh Amendment does not protect local government entities and officials, our analysis turns on whether Sheriff Barker is a state or a local official. The sheriff concedes that we held in *Harter v. Vernon*, 101 F.3d 334 (4th Cir.1996), that a North Carolina sheriff sued in his official capacity was not entitled to Eleventh Amendment immunity. The sheriff argues that two recent Supreme Court decisions, *Regents of the University of California v. Doe*, 519 U.S. 425, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997), and *McMillian v. Monroe County*, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997), have changed the law on Eleventh Amendment immunity for government officials. We disagree. In *Regents of the University of California*, the Court held that the fact that a third party (the federal government) had agreed to indemnify a state instrumentality did not divest that state agency of Eleventh Amendment immunity. Because Carter's case does not involve reimbursement, the *Regents* decision does not apply. The *McMillian* decision is also inapplicable because it did not address Eleventh Amendment immunity, but rather whether an Alabama sheriff's actions constituted county policy under § 1983. Turning to our analysis of Carter's case, we have considered all the factors our cases list as relevant to determining Eleventh Amendment immunity. For example, the state treasury and state sovereignty are not implicated in this suit, and the state does not control the Sheriff's personnel decisions. We therefore conclude that the Eleventh Amendment does not bar Carter's official capacity suits against Sheriff Barker.

*Id.,* 2000 WL 1008794, at *6 (citations omitted). The decision in *Carter* is not preclusive to a finding that a North Carolina sheriff, in enforcing state criminal laws, is acting in his capacity as a state official.

Historically, the position of sheriff in North Carolina has been tied not only to law enforcement, but to governance. In

---

**7.** Local Rule 36(c), Court of Appeals for the Fourth Circuit, provides, in relevant part, as follows:

*Citation of Unpublished Dispositions.*
In the absence of unusual circumstances, this Court will not cite an unpublished disposition in any of its published opinions or unpublished dispositions. Citation of this Court's unpublished dispositions in briefs and oral arguments in this Court and in the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case.

1754, sheriffs were appointed by the English Crown to collect quitrents from county residents. In 1776, the English system was little changed when the State of North Carolina, as one of its first legislative acts, created the office of sheriff, which was filled by legislative appointment. It was not until 1829 that citizens of North Carolina were given the authority to elect their sheriffs. As historical commentators have noted,[8] a sheriff headed county government and held the unique position of representing state government on a local basis. Although the North Carolina Constitution has been reworked several times in the last two centuries, the method of selecting a sheriff has undergone little change, despite the urging of reformers. Today, the office of sheriff is established by Article VII, Section 2, of the North Carolina Constitution (1970). The extraordinary role a sheriff plays in North Carolina's system of justice is nowhere better defined than in Chapter 17E-1, which provides, as follows:

> The General Assembly finds and declares that the office of sheriff, the office of deputy sheriff and the other officers and employees of the sheriff of a county are unique among all of the law-enforcement offices of North Carolina. The administration of criminal justice has been declared by Chapter 17C of the General Statutes to be of statewide concern to the people of the State. The Sheriff is the only officer of local government required by the Constitution. The sheriff, in addition to his criminal justice responsibilities, is the only officer who is also responsible for the courts of the State, and acting as their bailiff and marshal. The sheriff administers and executes criminal and civil justice and acts as the *ex officio* detention officer.

The deputy sheriff has been held by the Supreme Court of this State to hold an office of special trust and confidence, acting in the name of and with powers coterminous with his principal, the elected sheriff.

The offices of sheriff and deputy sheriff are therefore of special concern to the public health, safety, welfare and morals of the people of the State.

N.C. Gen.Stat. § 17E-1 (as revised by 1995 N.C. Sess. Laws 103). Unlike personnel decisions made by a sheriff (in which the *Carter* court found no state interest), it is clear that the State of North Carolina has a keen interest in the manner in which a sheriff administers the court system, enforces the laws, and cares for prisoners or pretrial detainees of the state; therefore, the sovereignty enjoyed by North Carolina is called into question when a North Carolina sheriff and his deputies are haled into a federal forum in their official capacities under Section 1983.

The North Carolina Court of Appeals, in *Buchanan v. Hight, supra,* found that a sheriff was a state official. In *Olvera,* the district court rejected that decision because it relied upon two prior state appellate decisions[9] that held in a similar vein, but were earlier rejected by the Court of Appeals for the Fourth Circuit in *Harter v. Vernon, supra,* because they were not from the state's highest appellate court and no reasoning was provided by the North Carolina Court of Appeals. The district court in *Olvera* found the reasoning of the state appellate court in *Buchanan* "neither controlling nor even persuasive." The *Buchanan* court held, in relevant part, as follows:

> In their fourth assignment of error, plaintiffs contend the trial court erred

---

8. Hugh Lefler, *North Carolina History.*

9. Messick v. Catawba County, 110 N.C.App. 707, 431 S.E.2d 489 (1993); Slade v. Vernon, 110 N.C.App. 422, 429 S.E.2d 744 (1993).

by holding that the defendant was a "state official" and thus was not subject to liability under 42 U.S.C. § 1983. Plaintiffs argue that because sheriffs are elected by the voters of individual counties and because numerous statutes refer to the local powers of sheriffs, they are local officials. Plaintiffs cite *Hull v. Oldham*, 104 N.C.App. 29, 407 S.E.2d 611, *disc. review denied*, 330 N.C. 441, 412 S.E.2d 72 (1991) as authority for that assertion. In *Hull*, this Court held that claims against a sheriff and deputies were properly instituted in superior court and were not required to be brought before the North Carolina Industrial Commission. *Id.* Here, plaintiffs' arguments are not persuasive because the only two appellate decisions in this State decided since Hull and dealing with section 1983 as applied to sheriffs hold to the contrary.

In *Corum v. University of North Carolina*, 330 N.C. 761, 771, 413 S.E.2d 276, 282, *rehearing denied*, 331 N.C. 558, 418 S.E.2d 664, *cert. denied*, 506 U.S. 985, 113 S.Ct. 493, 121 L.Ed.2d 431 (1992), our Supreme Court held that when an action under 42 U.S.C. § 1983 seeking monetary damages is brought against "the State, its agencies, and/or its officials acting in their official capacities" in state court neither the State nor its officials are considered "persons" within the meaning of the statute. Thus, a claim under section 1983 cannot be made against those entities. This rule was applied to sheriffs by this Court in *Messick v. Catawba County*, 110 N.C.App. 707, 431 S.E.2d 489, *disc. review denied*, 334 N.C. 621, 435 S.E.2d 336 (1993) and *Slade v. Vernon*, 110 N.C.App. 422, 429 S.E.2d 744 (1993). In *Messick*, the plaintiff sued the defendant sheriff claiming section 1983 violations because of an investigation into sexual abuse charges which were later dismissed. 110 N.C.App. at 713, 431 S.E.2d at 493.

Applying *Corum*, this Court held that because the plaintiff sought monetary damages, no recovery was available against the sheriff or the county. *Id.* In *Slade*, this Court held that a claim under section 1983 could not be maintained against a sheriff and jailers within his department because as "state officials" they were not "persons" within the meaning of the statute. 110 N.C.App. at 429, 429 S.E.2d at 748. Here, plaintiffs seek monetary damages for the alleged violations of section 1983; however, under *Messick* and *Slade* we conclude no recovery is available. See, e.g., *Corum*, 330 N.C. 761, 413 S.E.2d 276; *McMillian v. Monroe County, Alabama*, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

*Id.*, 133 N.C.App., at 304–05, 515 S.E.2d 225. While the district court in *Olvera* declined to follow such decision, in part because it was not the decision of the state's highest court, it would appear that the North Carolina Supreme Court affirmed such decision and found, as follows:

Upon consideration of the notice of appeal from the North Carolina Court of Appeals, filed by the Plaintiff in this matter pursuant to G.S. 7A–30, and the motion to dismiss the appeal for lack of substantial constitutional question filed by the defendant, the following order was entered and is hereby certified to the North Carolina Court of Appeals: the motion to dismiss the appeal is "Allowed by order of the Court in conference, this the 19th day of August 1999."

Clearly, the decisions of the United States Supreme Court in *McMillian* and *Regents*, as well as the decision of the Court of Appeals for the Fourth Circuit in *Harter*, were decided well before the North Carolina Supreme Court found that no consti-

tutional issue existed that would justify review of the appellate court's decision in *Buchanan.* Thus, not only has the North Carolina Court of Appeals consistently found a sheriff to be a state official in the specific context of Section 1983 claims, the North Carolina Supreme Court has found the latest decision unappealable due to a lack of a substantial constitutional question.

In the context of jurisdiction afforded under 28, United States Code, Section 636(c), this court strives to follow not only the decisions of the appellate court, but also those of the judges of this court. On this one issue has the undersigned departed from such philosophy, due in most part to an inconsistency that is developing which is fair to neither Section 1983 plaintiffs nor defendants. As this court can discern, a decisional rift is growing between state and federal courts in North Carolina in Section 1983 actions, which are actionable in either forum. The potential for inconsistency is most real in such circumstances, inasmuch as federal and state courts share Section 1983 jurisdiction. *See* footnote 1, *supra.* The difficulty arises when on one side of the street (in federal court) a Section 1983 claim against a sheriff is viable, while on the other side (in state court) it is not. Compounding this problem, there is no method in North Carolina for a federal court to certify an issue of state law (whether a sheriff is considered by the state to be a state official) so that a federal forum can determine the ultimate federal issue (whether eleventh-amendment immunity can be extended to such official).

With due deference and the utmost respect for decisions which have reached opposite conclusions in this district, *see Olvera v. Edmundson, supra,* and *Ramsey v.*

*Schauble,* 141 F.Supp.2d 584 (W.D.N.C. 2001) (Horn, M.J.), and based upon all the information and precedent available to this court, including the decision of the Supreme Court in *McMillian,* this court finds that the Section 1983 official-capacity claim lodged against the sheriff is not viable, inasmuch as it is a suit against the State of North Carolina, which enjoys eleventh-amendment immunity.

**5. Substantive Analysis of Section 1983 Claim Against Defendant in his Official Capacity**

 In the alternative, the court has also conducted a substantive analysis of plaintiffs' Section 1983 claim against defendant in his official capacity. Without doubt, defendant lawfully confiscated the machines as contraband in accordance with the plain meaning of Chapter 14–306.1(a)(1).

The proposed broader reading of such statute would read in a loophole that is not supported by the plain meaning of the statute or the legislative history, which has been presented in the form of contemporaneous newspaper accounts.[10] The proposed reading suggested by plaintiffs would not only be contrary to the unambiguous language of the statute, it would make null the express purpose of the Act, which was the prevention of migration of South Carolina gaming machines into North Carolina in the summer of 2000.

The "discovered-property" provisions of Chapter 105–312(e) is not synonymous with the proposition that "a taxpayer may list his property for taxation at anytime." The "listing period," by statute, is the month of January. N.C. Gen.Stat. § 105–307. The only relief available to a taxpayer who cannot meet the January 31 dead-

---

10. The court notes that there is no official "legislative record" in North Carolina comparable to the *Congressional Record,* making

judicial reference and notice of contemporaneous news accounts the best available evidence.

line is to petition the Board of County Commissioners for an extension of time. Upon a showing of "good cause," the Board may grant the taxpayer's request, but in no event may the listing period be extended beyond April 15. N.C. Gen.Stat. § 105–307.3. Failure to timely list property subject to *ad valorem* taxation is a misdemeanor. N.C. Gen.Stat. § 105–308. Section 105–312(b), on the other hand, charges the Assessor with "the duty . . . to see that all property not properly listed during the regular listing period be listed, assessed and taxed as provided in this Subchapter." The Assessor must "list" any discovered property and proceed to assess its value. N.C. Gen.Stat. § 105–312(d). In order to tax the discovered property for the entire year, it must be treated as though it had been properly listed during January's "regular listing period." It is for that reason that subsection (e) expressly provides that the Assessor's listing of the discovered property "shall have the same force and effect as if it had been submitted during the regular listing period." Subsection (e), therefore, exists solely for the benefit of the Tax Assessor to collect back taxes on property which should have been listed, but was not. Such a reading of that provision is consistent with North Carolina case law, which provides:

> The phrase "discovered property" means property which the tax authorities have ascertained should have been listed for tax purposes by the owner but which was not so listed, thus the property escaped taxation.

*Appeal of McLean Trucking Co.*, 283 N.C. 650, 653–54, 197 S.E.2d 520 (1973). Subsection(e) is a tool for the tax collector, not a tool for the property owner, and cannot be imported into unambiguous legislation to defeat the purpose of such legislation by legitimizing machines which were not listed by January 31, 2000.

Finally, plaintiffs' reading of Chapter 14–306.1 would also run counter to North Carolina's rule of statutory construction—that a later-enacted particularized statute controls over a preexisting more generalized statute.

> Where, as here, one statute deals with a particular situation in detail, while another statute deals with it in general and comprehensive terms, the particular statute will be construed as controlling, absent a clear legislative intent to the contrary.

*Merritt v. Ridge*, 323 N.C. 330, 337, 372 S.E.2d 559 (1988) (citation omitted). Having created both the more permissive language of Chapter 105–312(e) and the restrictive language of Chapter 14–306.1(a)(1), the North Carolina Legislature has demonstrated its ability to employ permissive and restrictive words of art, and had it desired to use "treated as though listed by" or "deemed to have been listed by" instead of "listed by," it certainly had the ability to do so. North Carolina requires that undefined words in a statute must be accorded "their plain and definite meaning" when the statutory language at issue "is clear and unambiguous," *Spruill v. Lake Phelps Volunteer Fire*, 351 N.C. 318, 322, 523 S.E.2d 672 (2000), and the plain words of the statute support the decision of the defendant to decline registration and seize plaintiffs' machines. Inasmuch as the seizure of contraband under the circumstances in which this case arises is, *per se*, lawful, the court will, as an alternative basis for decision, grant defendant's Motion for Summary Judgment on plaintiffs' Section 1983 claim against him in his official capacity.

## IV. Supplemental Claims

The remainder of plaintiffs' claims are asserted under the supplemental jurisdiction of this court. 28 U.S.C. § 1367(a). Inasmuch as this court is dismissing with

prejudice the federal claim over which it has original jurisdiction, the court will decline to exercise supplemental jurisdiction over any state-law claims (including, but not limited to, any Motion for Appropriate Relief *or* Motion for Return of Seized Property) and dismiss those claims without prejudice as to filing in an appropriate state forum. To the extent that a federal claim could be inferred in any of those claims, those matters are dismissed with prejudice.

As a matter of housekeeping, all other pending motions, if any, are denied without prejudice as moot, and this matter is removed from the trial calendar.

### Decision

For the reasons discussed above, defendant's Motion for Summary Judgment (# 7) will be allowed and all federal claims in this action will be dismissed with prejudice, while any state-law claims will be dismissed without prejudice. All other pending motions, if any, will be denied without prejudice as moot. A judgment reflecting such decision is entered simultaneously herewith.