**Virginia LAYMAN, as General Guardian for Ricky C. Layman, Plaintiff;**

v.

**Richard T. ALEXANDER, in his Individual and Official Capacity as Sheriff of Haywood County, Jeffery L. Haynes, Individually and in his official capacity as an Employee of the Sheriff of Haywood County, Jeremy K. Holland, Individually and in his official capacity as an Employee of the Sheriff of Haywood County, Cheryl B.**

Trull, Individually and in her official capacity as an Employee of Haywood County, William J. Chambers, Individually and in his official capacity as an Employee of the Sheriff of Haywood County, Redland Insurance Company, Surety for Sheriff Richard T. Alexander, Defendants.

No. 1:03CV6–C.

United States District Court,
W.D. North Carolina.
Asheville Division.

Nov. 21, 2003.

Joseph P. McGuire, Mary E. Euler, McGuire, Wood & Bissette, P.A., Asheville, NC, for plaintiff.

Sean F. Perrin, Scott D. MacLatchie, Womble, Carlyle, Sandridge & Rice, Charlotte, NC, Killian Kersten, Killian, Kersten, Patton & Kirkpatrick, P.A., Waynesville, NC, Leon M. Killian, III, Nelson, Mullins, Riley & Scarborough, LLP, Raleigh, NC, Jeffrey W. Norris, Jeffrey W. Norris & Associates, PLLC, Waynesville, NC, for defendants.

## MEMORANDUM OF DECISION AND ORDER

COGBURN, United States Magistrate Judge.

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss the Second Amended Complaint. Having considered the pleadings, the parties' briefs, the arguments of counsel, and the applicable law, the undersigned will grant in part and deny in part Defendants' motion.

## FACTUAL AND PROCEDURAL BACKGROUND

This action was filed on January 3, 2003 by Plaintiff Virginia Layman, as guardian of Ricky C. Layman, against Richard T. Alexander, in his individual and official capacities as Sheriff of Haywood County, North Carolina; Jeffery L. Haynes, Jeremy K. Holland, Cheryl B. Trull, and William J. Chambers, in their individual and official capacities as employees of the Sheriff of Haywood County; and Redland Insurance Company, surety for Sheriff Alexander.[1] In the Complaint, Plaintiff alleged generally that Defendants Alexander, Haynes, Holland, Trull, and Chambers failed to obtain necessary medical care and acted with deliberate indifference to the serious medical needs of Plaintiff's ward, Ricky C. Layman, when Ricky was detained in the Haywood County Jail on February 12, 2000. Plaintiff subsequently amended her complaint twice, and Defendants have moved to dismiss her Second Amended Complaint.

In the Second Amended Complaint, Plaintiff alleges that Ricky was handcuffed and detained by Sheriff's Deputy Fowler in the early morning hours of February 12, 2000 at the Springhouse Saloon in Maggie Valley, North Carolina. (Compl.[2] ¶¶ 14–15). Plaintiff alleges that Deputy Fowler transported Ricky to the Haywood County Jail and took him to the third floor for booking. (Id. ¶¶ 15–17). According to Plaintiff's complaint, Defendants Trull and Holland, who were jailers on duty at the

---

1. While Plaintiff named Redland Insurance Company as a defendant, the Court's reference to "defendants" collectively herein generally refers only to the law enforcement defendants, except that all defendants joined in the motion to dismiss.

2. For ease of reference, the Court will refer to Plaintiff's Second Amended Complaint as "Compl."

jail, began to search Ricky's rear pockets, while Deputy Fowler searched his front pockets. (*Id.* ¶ 18). Plaintiff alleges that a struggle ensued between Ricky, who was still handcuffed, and Deputy Fowler and that Deputy Fowler grabbed Ricky and threw him to the floor. (*Id.*) Plaintiff alleges that, unable to brace himself, Ricky struck his head on a steel door or an object protruding from a steel door in the booking area during his fall. (*Id.*) Plaintiff alleges further that Ricky lay unconscious for one to two minutes, that there was blood on the floor near the steel door, and that there was blood coming from behind Ricky's left ear. (*Id.* ¶ 19). According to the complaint, Defendant Holland then removed Ricky's handcuffs and rolled him over to open his airway, while Lieutenant Haynes called for Emergency Medical Technicians ("EMTs") to respond to the jail booking area. (*Id.* at 19–20).

Plaintiff alleges that after approximately two minutes of unconsciousness, Ricky awoke, asked where he was, and why he was being arrested. (Compl. ¶ 21). Approximately four or five minutes after Ricky struck his head, the EMTs arrived, observed a laceration behind Ricky's left ear, and contacted Dr. Michael Brown at the Haywood Regional Medical Center Emergency Room. (*Id.* ¶ 22). According to the complaint, Dr. Brown advised the EMTs that it was not necessary to transport Ricky to the hospital but that he should be watched closely for vomiting or strange behavior and that he should be brought to the hospital if any of those occurred. (*Id.*)

Plaintiff alleges that at approximately 3:00 a.m., Ricky was placed in an isolation cell and that Lieutenant Haynes ordered Defendant Holland to check on him every five to ten minutes and to wake him up if he fell asleep. (Compl. ¶ 23). According to Plaintiff, at 4:30 a.m., Defendant Holland informed Defendant Trull that Ricky was "acting crazy" and "saying things that made no sense." (*Id.* ¶ 24). Defendant Holland then contacted Dr. Brown, who ordered, at 4:37 a.m., that Ricky be transported to the emergency room at the hospital. (*Id.*) Plaintiff alleges that when Defendant Holland returned to Ricky's cell, he found him sleeping and that he negligently and/or with deliberate indifference to Ricky's serious medical condition, ignored Dr. Brown's order and left Ricky apparently asleep in his cell. (*Id.* ¶ 25). Plaintiff alleges further that Defendant Trull also knew or reasonably should have known of Dr. Brown's order, which was set forth plainly in the jail logs, but failed to take any steps to transport Ricky to the hospital or obtain medical treatment for him. (*Id.*)

Plaintiff alleges that at 5:45 a.m., Defendant Holland was relieved by Defendant Chambers, who knew or should have known of Dr. Brown's order to take Ricky to the hospital, which order was stated plainly in the jail logs, and that he also failed to obtain medical treatment for Ricky. (Compl. ¶ 26). Plaintiff alleges that Defendant Chambers checked on Ricky eighteen times between 5:45 a.m. and 11:06 a.m., each time noting in the jail log that Ricky was "resting," and that at 11:17 a.m., Defendant Chambers asked Virginia McNair, a nurse who was at the jail to check on a female inmate, to check on Ricky in his cell. (Compl. ¶¶ 27–28). According to the complaint, Defendant Chambers and Ms. McNair attempted to rouse Ricky between 11:17 a.m. and 11:30 a.m., and at approximately 11:32 a.m., Ms. McNair noted that Ricky's face had turned blue and that he had stopped breathing. (*Id.* ¶¶ 28–29). Ms. McNair then began administering cardio-pulmonary resuscitation, which succeeded in enabling Ricky to breathe on his own, and Ricky's blood pressure returned to normal. (*Id.* ¶ 29). Ricky did not regain consciousness, howev-

er, and at approximately 11:38 a.m., EMTs transported Ricky to the hospital emergency room, where they arrived at 12:14 p.m. (*Id.* ¶¶ 29–30). Plaintiff alleges that Ricky was shortly thereafter transported to Mission St. Joseph's Hospital in Asheville, North Carolina, where he underwent surgery to remove a blood clot from his brain located behind his left ear. (Compl.¶ 31). According to Plaintiff, Ricky was in a coma for two weeks and sustained severe and permanent brain injury. (*Id.* ¶ 32).

Plaintiff alleges in her complaint that between the time Dr. Brown ordered Defendant Holland to take Ricky to the hospital until Ricky was transported there approximately seven hours later, Defendants engaged in conduct that was willful, wanton, and criminally negligent, and that their conduct was "so blatantly inappropriate as to evidence intentional maltreatment." (Compl.¶ 33). Plaintiff alleges further, pursuant to 42 U.S.C. § 1983, that Defendants were deliberately indifferent to Ricky's serious medical needs in violation of the Fourteenth Amendment to the United States Constitution and that their conduct was directly responsible for the severe brain damage suffered by Ricky. (*Id.* ¶¶ 33–35). Plaintiff alleges, also, that Sheriff Alexander and Lieutenant Haynes were responsible for supervising and training jailers and that they failed properly to train Defendants Holland, Chambers, and Trull to provide necessary medical care to Ricky and similarly situated detainees in the jail, in violation of the Fourteenth Amendment. (*Id.* ¶ 37). Finally, with respect to her Fourteenth Amendment claim, Plaintiff alleges that Sheriff Alexander failed to establish and implement proper policies and procedures for monitoring head-injured and unconscious inmates in violation of Ricky's Fourteenth Amendment right to receive prompt and adequate medical care. (*Id.* ¶ 38).

As her second cause of action, Plaintiff alleges that Defendants are liable for their negligent failure to obtain medical care for Ricky. Specifically, Plaintiff alleges that Sheriff Alexander owed a duty to inmates at the jail, including Ricky, to exercise due care for their safety and to establish proper policies and procedures to provide medical supervision and emergency medical care and that Defendants also owed a special duty to Ricky based on their knowledge of his head injury, strange behavior, and direction from Dr. Brown. (Compl.¶¶ 40–41). Plaintiff alleges that Sheriff Alexander violated his duty to establish policies and procedures sufficient to provide for medical supervision and emergency medical care and that all of the Defendants violated their special duty to Ricky by failing to exercise due care for his safety, failing to provide medical supervision and emergency medical care, and failing to transport him to the hospital when directed to do so. (*Id.* ¶¶ 42–43). Finally, in her second cause of action, Plaintiff alleges that as a proximate result of the Defendants' actions, Ricky suffered damages. (*Id.* ¶ 44).

Plaintiff asserts her third cause of action against Sheriff Alexander for negligent supervision of his agents and employees. In particular, Plaintiff alleges that Sheriff Alexander owed a duty to all inmates of the jail and a special duty to Ricky, in particular, based on his agents' knowledge of his head injury and direction from Dr. Brown, properly to supervise his employees who work in the jail to ensure that these employees monitored the medical needs of inmates and provided access to prompt medical care and/or transport. (Compl.¶¶ 46–49). Plaintiff alleges that as a proximate cause of Sheriff Alexander's negligence, Ricky suffered damages, including pain and suffering, mental anguish, emotional distress, medical expenses, and lost wages. (*Id.* ¶ 50).

Finally, in her fourth cause of action, Plaintiff alleges that Defendants violated North Carolina General Statutes § 162–55 prohibiting injury to a prisoner by a jailer when they failed to transport Ricky to the hospital immediately upon direction to do so by Dr. Brown, failed adequately to monitor Ricky, and failed to provide medical supervision and emergency medical care to Ricky. (Compl.¶ 52). Plaintiff also alleges that Sheriff Alexander, in particular, violated § 162–55 by failing to establish proper policies and procedures for the monitoring of head-injured and unconscious inmates and by failing to ensure that such inmates receive prompt medical care and/or transport. (*Id.* ¶ 53).

## MOTION TO DISMISS STANDARD

Under Rule 12(b)(6), a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In evaluating a motion to dismiss, "a court must accept the factual allegations of the complaint as true," *GE Investment Private Placement Partners II v. Parker,* 247 F.3d 543, 548 (4th Cir.2001), and all reasonable inferences from the facts alleged must be drawn in the plaintiff's favor, *see Edwards v. City of Goldsboro,* 178 F.3d 231, 244 (4th Cir.1999). Notwithstanding this exacting standard, dismissals should be granted when warranted. As recognized by the Supreme Court in *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), the Rule 12(b)(6) procedure for early dismissal "streamlines litigation by dispensing with needless discovery and fact finding." *Id.,* 490 U.S. at 326–27, 109 S.Ct. at 1832. Accordingly, "[n]othing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable." *Id.,* 490 U.S. at 327, 109 S.Ct. at 1832.

## DISCUSSION

### I. Eleventh Amendment Immunity and "Personhood" under § 1983

Defendants first argue that the official capacity claims against all defendants under § 1983 are barred by the Eleventh Amendment to the United States Constitution because the sheriff functions as a state official and the Eleventh Amendment bars suits against the individual states. In a related argument, Defendants assert that a sheriff in North Carolina and his personnel, when sued in their official capacities, are not "persons" subject to suit under § 1983 because they function as state, rather than local, officials.

■ With respect to the Eleventh Amendment specifically, that Amendment provides, in pertinent part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. While the undersigned has held previously, and remains convinced, that the creation of the office of sheriff and the historical role of the sheriff in North Carolina in the exercise of his duties of governance and the enforcement of state law is more properly considered an office of the State of North Carolina, entitled to all of the privileges and immunities bestowed upon any office of the State, *see, e.g., Henderson Amusement, Inc. v. Good,* 172 F.Supp.2d 751 (W.D.N.C.2001), *aff'd,* 59 Fed.Appx. 536, 2003 WL 932463 (4th Cir.2003), as explained in two recent decisions, *see Harmon v. Buchanan,* No. 1:00cv28 (W.D.N.C. Aug. 27, 2003); *Jones v. Buchanan,* No. 1:00cv27 (W.D.N.C. Oct. 9, 2003), the Fourth Circuit held in 1996

and has since reaffirmed that "the Eleventh Amendment does not bar a suit against a North Carolina sheriff in his official capacity," *Harter v. Vernon,* 101 F.3d 334, 343 (4th Cir.1996); *see also Cash v. Granville County Bd. of Educ.,* 242 F.3d 219, 227 (4th Cir.2001). In light of the Fourth Circuit's decision in *Harter* and its clear and unequivocal reaffirmation of its *Harter* decision—both its analysis and its judgment—in *Cash,* this Court is bound to adhere to that decision and, therefore, concludes that North Carolina sheriffs are not entitled to immunity under the Eleventh Amendment, but rather, are subject to suit in federal court.

■ In addition to arguing that Sheriff Alexander and his personnel are entitled to Eleventh Amendment immunity, Defendants also argue that because these officials function as state officers, they are not "persons" subject to suit under § 1983 and that Plaintiff's Fourteenth Amendment claims against Defendants in their official capacities should be dismissed on that basis. Although there have been courts which have questioned whether the analyses of Eleventh Amendment immunity and "personhood" under § 1983 are co-extensive, *see, e.g., Alkire v. Irving,* 330 F.3d 802, 812 n. 7 (6th Cir.2003), the Fourth Circuit in *Harter* made clear that if a defendant is not entitled to Eleventh Amendment immunity, he is a "person" subject to suit under § 1983, describing the intersection of the two analyses as follows:

> "Personhood" *vel non* does not provide a basis for a state official to avoid suit in federal court. Rather, a defendant state official must plead Eleventh Amendment immunity. The Eleventh Amendment is a bar to the jurisdiction of a federal court, and as such, it precedes the statutory question of "personhood" under § 1983. Once the Eleventh Amendment inquiry is complete, there is no need to consider "personhood." If an official or entity is not immune from suit under the Eleventh Amendment that official or entity *is* a "person subject to suit under § 1983...." The opposite is also true, if the Eleventh Amendment applies, the entity or official is not a person under § 1983.... Therefore, federal courts should approach these issues solely under the rubric of the Eleventh Amendment, and should not consider an argument of "personhood" under § 1983.

*Harter,* 101 F.3d at 338 n. 1. In this case, then, since the Court has concluded that Defendants are not entitled to Eleventh Amendment immunity, they are "persons" subject to suit under § 1983, and no further analysis is warranted.

## II. Qualified Immunity

■ Defendants next argue that Plaintiff's § 1983 claims against Sheriff Alexander and Lieutenant Haynes in their individual capacities are due to be dismissed because Plaintiff has failed to allege facts sufficient to support the conclusion that they violated Ricky's constitutional rights and that, in any event, they are entitled to qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In evaluating whether a government official is entitled to qualified immunity, a court is required to determine, first, whether the facts alleged show that the official's conduct violated a constitutional right. *See Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). If the facts produced or alleged by the plaintiff do not establish

the violation of a constitutional right, the inquiry ends. *See id.* If, however, the facts viewed in the light most favorable to the plaintiff do establish such a violation, the court must determine whether the right was clearly established such that a reasonable official would have known that his conduct would violate that right. *See id.; see also Brown v. Gilmore,* 278 F.3d 362, 367 (4th Cir.2002).

■ In this case, Plaintiff alleges that Sheriff Alexander and Lieutenant Haynes violated Ricky's Fourteenth Amendment right to receive adequate medical care while detained in the Haywood County Jail. It is well settled that pre-trial detainees have a constitutional right under the Fourteenth Amendment to the provision of medical care, which right is violated when a jail or prison official acts with deliberate indifference to "a substantial risk of serious harm to an inmate." *Farmer v. Brennan,* 511 U.S. 825, 828, 114 S.Ct. 1970, 1974, 128 L.Ed.2d 811 (1994) (Eighth Amendment requires provision of medical care to prisoners who require it); *Brown v. Harris,* 240 F.3d 383, 388 (4th Cir.2001) (standard for deliberate indifference to serious medical needs of pre-trial detainees under Fourteenth Amendment is the same as that applied to prisoners under the Eighth Amendment). In order to establish a claim for deliberate indifference under the Fourteenth Amendment, a plaintiff must show: (1) he was detained under conditions posing a substantial risk of serious harm; and (2) a prison or jail official knew of and disregarded an excessive risk to his health or safety. *See Harris,* 240 F.3d at 389. If the jail official knew of the risk to the plaintiff's safety and responded reasonably, his claim fails, "even if the harm was not ultimately averted." *Farmer,* 511 U.S. at 844, 114 S.Ct. at 1983.

In this case, then, Plaintiff must show that the jail officials responsible for Ricky's care were aware of a substantial risk of serious harm to Ricky and disregarded that risk. There are no allegations suggesting that either Sheriff Alexander or Lieutenant Haynes was present when the decisions were made not to transport Ricky to the hospital or obtain further medical care once Ricky apparently fell asleep. Accordingly, these defendants may only be liable if they failed to take some action as supervisors or, in the case of Sheriff Alexander, as policy-maker, that would have prevented the harm to Ricky and if this failure is actionable.

■ While the doctrine of *respondeat superior* generally may not be invoked to impose supervisory liability under § 1983, "[i]t is well settled that supervisory officials may be held liable ... for the constitutional injuries inflicted by their subordinates." *Baynard v. Malone,* 268 F.3d 228, 235 (4th Cir.2001); *see also Tigrett v. Rector and Visitors of the Univ. of Va.,* 290 F.3d 620, 630 (4th Cir.2002). As explained by the Fourth Circuit, "the theory of supervisory liability [under § 1983] arises from the obligation of a supervisory law officer to insure that his subordinates act within the law." *Randall v. Prince George's County,* 302 F.3d 188, 203 (4th Cir.2002). Accordingly, supervisory liability may arise where: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference" to, or tacit authorization of, the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See id.* at 206; *Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir.1994). Although not specifically men-

tioned in this articulation of the standard, a supervisor's failure to train his employees can subject him to liability where the failure to train reflects a "deliberate indifference" to the rights of citizens. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999); *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir.1996); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 471 (5th Cir.1994); *see also Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir.2000) (discussing municipality liability for failure to train).

■■■ With respect to the first requirement—that the supervisor have actual or constructive knowledge of his subordinate's conduct that poses a pervasive and unreasonable risk of constitutional injury—the Fourth Circuit has stated that "[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Shaw*, 13 F.3d at 799. Deliberate indifference on the part of a supervisor may not be established "by pointing to a single incident or isolated incidents, . . . for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities." *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir.1984) (citation omitted). Similarly, a supervisor cannot be held responsible for "the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Id.* Rather, it is "[a] supervisor's continued inaction in the face of documented widespread abuses [that] provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." *Id.; see also Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir.1995) (holding that plaintiff had presented sufficient evidence to support

supervisory liability claim under § 1983 where evidence supported conclusion that supervisor actually knew "of a breakdown in the proper workings of the department" and abandoned the specific duties of his position by failing to address that breakdown). Ultimately, in determining whether the imposition of supervisory liability is appropriate, the Fourth Circuit has stated that "liability is . . . determined 'by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" *Shaw*, 13 F.3d at 798 (quoting *Slakan*, 737 F.2d at 376).

In this case, Plaintiff alleges, with respect to Sheriff Alexander and Lieutenant Haynes, that these defendants were responsible for supervising and training the jailers and that they failed properly to train Defendants Holland, Chambers, and Trull to provide necessary medical care to Ricky and similarly situated detainees and that Sheriff Alexander failed to establish and implement proper policies and procedures for monitoring head-injured and unconscious inmates. There are no allegations, however, from which the Court may reasonably infer that either Sheriff Alexander or Lieutenant Haynes had actual or constructive knowledge that their subordinates posed a pervasive and unreasonable risk of constitutional injury to citizens like Ricky. While Plaintiff alleges, in conclusory fashion, that these defendants failed adequately to supervise their subordinates and that Lieutenant Haynes was present at the jail when Ricky was injured, there are no allegations suggesting that either Sheriff Alexander or Lieutenant Haynes had any direct knowledge that Ricky began exhibiting strange behavior or that their subordinates failed to transport Ricky to the hospital after having been ordered to do so by Dr. Brown. In fact, the only allegations concerning Lieutenant Haynes' response to Ricky's injury

are that Lieutenant Haynes called the EMTs after Ricky fell and that after Dr. Brown initially advised the officers that they did not need to transport Ricky to the hospital, Lieutenant Haynes instructed Defendant Holland to check on Ricky every five to ten minutes and to wake him up if he fell asleep.

There are also no allegations of previous incidents during which jail officials failed to provide necessary medical care to detainees or which should have alerted jail officials of the need to train jailers as to the appropriate manner of responding to head-injured or unconscious inmates. In short, while Plaintiff alleges generally that Sheriff Alexander and Lieutenant Haynes failed to supervise or train their subordinates and that this failure caused Ricky's injuries, she has pointed only to a single incident suggesting the need for further training. As set forth above, the "deliberate indifference" standard as applied to policymaking or supervising officials under § 1983 requires continued inaction or an unreasonable response to a pattern of conduct that threatens the constitutional rights of citizens. Plaintiff has alleged no facts that would support a finding of continued inaction in the face of a pervasive or unreasonable risk of harm. Accordingly, Plaintiff has failed to allege facts sufficient to support a cause of action for deliberate indifference under the Fourteenth Amendment against Sheriff Alexander or Lieutenant Haynes, in their individual capacities, and Defendants' motion to dismiss these claims is due to be granted.

### III. Public Official Immunity

 Defendants next argue that Plaintiff's state common law claims for negligence and negligent supervision against Sheriff Alexander, to the extent asserted against Sheriff Alexander in his individual capacity, should be dismissed on the basis that Sheriff Alexander enjoys public official immunity against personal capacity suits under North Carolina law. As explained by the North Carolina Court of Appeals, "[t]he general rule is that a public official is immune from personal liability for mere negligence in the performance of his duties, but he is not shielded from liability if his alleged actions were corrupt or malicious or if he acted outside and beyond the scope of his duties." *Slade v. Vernon,* 110 N.C.App. 422, 428, 429 S.E.2d 744, 747 (1993). Stated another way, "[p]ublic officers are absolutely immune from liability for discretionary acts absent a showing of malice or corruption." *Jones v. Kearns,* 120 N.C.App. 301, 305, 462 S.E.2d 245, 247 (1995). A plaintiff seeking to hold a public official liable for conduct in the performance of official or governmental duties involving the exercise of discretion, therefore, must allege and prove corruption or malice; allegations of negligence or even "reckless indifference" are not sufficient. *See Schlossberg v. Goins,* 141 N.C.App. 436, 446, 540 S.E.2d 49, 56 (2000); *Jones,* 120 N.C.App. at 306, 462 S.E.2d at 248. A "discretionary act" is defined as one "requiring personal deliberation, decision, and judgment." *Jones,* 120 N.C.App. at 306, 462 S.E.2d at 248.

In this case, Plaintiff alleges in her second and third causes of action that Sheriff Alexander is liable for the negligent failure to obtain medical care for Ricky and for the negligent supervision of his subordinates, respectively. Specifically, Plaintiff alleges that Sheriff Alexander owed a duty of care to the inmates at the Haywood County Jail to establish proper policies and procedures to provide for their health and welfare, including the monitoring of unconscious inmates, and that Sheriff Alexander violated this duty of care. Plaintiff also alleges that Sheriff Alexander was grossly and wantonly negligent in failing to supervise and train his subordinates. Plaintiff has not alleged, however, that Sheriff Alexander acted out of

malice or corruption, and the gravamen of both causes of action is negligence, the precise level of culpability that North Carolina courts have made clear is insufficient to overcome public official immunity. While Plaintiff also alleges that Sheriff Alexander was grossly negligent, the Fourth Circuit has previously concluded that, as with allegations of mere negligence, allegations of gross negligence are also not sufficient to pierce a public official's immunity from individual liability. *See Shaw*, 13 F.3d at 803–04. Here, it cannot be disputed that the extent to which Sheriff Alexander trained or failed to train his subordinates in the provision of medical care to jail inmates were discretionary acts within the scope of his authority as the county sheriff. Since Plaintiff has not alleged that these decisions were made with malice or as a result of corruption, Sheriff Alexander is entitled to public official immunity from these causes of action in his individual capacity. Defendants' motion to dismiss Plaintiff's second and third causes of action, to the extent asserted against Sheriff Alexander in his individual capacity, will be granted.

## IV. Injury to Prisoner by Jailer

■■■■ Finally, Defendants argue that Plaintiff's fourth cause of action, asserted under North Carolina General Statutes § 162–55 for injury to a prisoner by a jailer, should be dismissed because Plaintiff has failed to allege intentional misconduct on the part of any of the defendants. Section 162–55 provides that "[i]f the keeper of a jail shall do, or cause to be done, any wrong or injury to the prisoners committed to his custody, contrary to law, he shall not only pay treble damages to the person injured, but shall be guilty of a Class I misdemeanor." N.C. Gen.Stat.

§ 162–55. This statute codifies "longstanding North Carolina precedent that a sheriff and his deputies are liable for their negligence which results in an injury to a prisoner." *Ramsey v. Schauble*, 141 F.Supp.2d 584, 591 (W.D.N.C.2001). In its codification of North Carolina common law providing a remedy for negligence by a jailer, however, the legislature criminalized such conduct, requiring that a plaintiff "prove beyond a reasonable doubt that the jailer intended to injure the plaintiff or that the jailer was guilty of criminal negligence." *Id.* "Criminal negligence" is defined as "such recklessness or carelessness, resulting in injury or death, as imports a thoughtless disregard of consequences, or a heedless indifference to the safety and rights of others." *Letchworth v. Gay*, 874 F.Supp. 107, 109 (E.D.N.C. 1995). Thus, while mere negligence is not sufficient to subject a defendant jailer to liability under § 162–55, reckless indifference to an inmate's safety, resulting in injury or death, is sufficient.[3] *Compare Letchworth*, 874 F.Supp. at 109–110 (holding no cause of action under § 162–55 where evidence at trial supported only finding of negligence and no evidence of "thoughtless disregard" or "heedless indifference" was adduced) *with Ramsey*, 141 F.Supp.2d at 592 (denying motion to dismiss § 162–55 claim where plaintiff alleged facts that could support a finding that defendant "disregarded and was indifferent to" plaintiff's safety). Additionally, a sheriff or supervisor may be held liable for the acts of his subordinates under the principles of *respondeat superior*. *See Ramsey*, 141 F.Supp.2d at 591.

In this case, Plaintiff has alleged that each of these defendants was deliberately indifferent to Ricky's right to receive ade-

---

**3.** The Court notes that it is the sufficiency of the "reckless indifference" level of culpability that permits Plaintiff's claim under § 162–55 to proceed, even while the Court must hold that public official immunity protects Sheriff Alexander from personal liability for violations of state law.

quate medical care following his injury on February 12, 2000. Plaintiff alleges, with respect to Defendants Holland, Trull, and Chambers, that each of these defendants knew or should have known of Dr. Brown's order to transport Ricky to the hospital but failed to do so, notwithstanding Ricky's head injury, explicit instructions from Lieutenant Haynes not to permit Ricky to go to sleep, and an order from Dr. Brown to transport Ricky to the hospital. Even more specifically, Plaintiff alleges that Defendants' failure to transport Ricky to the hospital or otherwise obtain adequate medical care for his injury was "willful, wanton, and criminally negligent and so blatantly inappropriate as to evidence intentional maltreatment." (Compl.¶ 33). These allegations are more than sufficient to state a claim against these defendants under § 162–55. Under the principles of *respondeat superior,* Plaintiff's § 162–55 claims against Sheriff Alexander and Lieutenant Haynes survive, as well. Defendants' motion to dismiss Plaintiff's cause of action under § 162–55 will, therefore, be denied.

### ORDER

For the foregoing reasons, **IS, THEREFORE, ORDERED** that Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART.** Specifically, **IT IS ORDERED** that Defendants' motion to dismiss, to the extent it requests that Plaintiff's § 1983 claim against Sheriff Alexander in his official capacity be dismissed on the basis of Eleventh Amendment immunity and that Plaintiff's § 162–55 also be dismissed is **DENIED. IT IS FURTHER ORDERED** that Defendants' motion to dismiss Plaintiff's § 1983 claims against Sheriff Alexander and Lieutenant Haynes in their individual capacities and Plaintiff's claims for negligence and negligent supervision asserted against Sheriff Alexander in his official capacity is **GRANTED,** and these claims are hereby **DISMISSED WITH PREJUDICE.**